Good morning. May it please the Court, Mr. Ficca. My name is Nick Veith. I work for the Federal Defenders of Idaho and I represent Ms. Tresha Howell. We brought this appeal to ask this Court two questions. The first question was whether the current policy that the Idaho State Police regarding inventory searches was constitutional as written and in conformity with Opperman. The second question was even if it was constitutional and in conformity with the Supreme Court's ruling in Opperman, did the Idaho State Police use the inventory search as a pretext to find drugs. Regarding the constitutional issue, the facts and the record, the Idaho State Police policy indicates that they will inventory a car unless they have probable cause regarding a crash. Both Officers Olson, when they testified, and Officer Zimmerman, Officer Olson's supervisor, indicated on direct and cross that there are no exceptions. That the probable cause exception indicated in that policy evidently does not apply. Let me just back up a little bit. Yes, Your Honor. If they arrived at the scene of a crash and there was probable cause immediately to believe that there were drugs or that some other crime had been committed to search the car. Your Honor, if there was probable cause, I believe that the Supreme Court has indicated, yes, they would. Okay, so let's put that over here. They arrive on the scene, the young woman is taken away, but for whatever reason, let's say there's been a murder or whatever, they say, okay, probable cause. So they search, period. So we put those, if there's probable cause, we kind of put that over here. And that's why I was confused in your brief by your argument that there was probable cause. If there's no probable cause, then the procedure tells you what you need to do. And you can only do that either if the person is incapacitated or if they're present, if they tell you what they want you to do with the towing thing. So that's why the question to the officer seems to me to not that the answer was the obvious one. It doesn't really matter because if there's probable cause, we search. And if there's not probable cause, we go by this, this meaning the procedure. If I understand Your Honor's question correctly, I think we're going into the inevitable discovery area. Is that the line of thinking? Well, no, I mean, the briefs are all over the map on this. So it seems to me you've got to, I see the decision tree like this, so he'll help me out. Probable cause or no probable cause, first question. If there's probable cause, you're telling me they could search anyway. So we put that over here. If there's no probable cause, well, we know typically you can't conduct some kind of search if there's no probable cause except there are administrative inventory exceptions, and then there's a policy here. So if they meet the criteria in the policy, they could have a search. You then say, well, but maybe the policy isn't clear enough or maybe they went too far. Am I correct about that? Yes, Your Honor. Okay. So I guess I'm still not understanding why you made the probable cause argument, because your brief says basically there was probable cause. The line of thinking was we believe that the officer, that Officer Olson, had reasonable suspicion, enough suspicion that he should have gone to a neutral magistrate. But you just told us that if there's probable cause, he doesn't need to. But we're in the area of investigatory search. Now, wait a minute. Now, granted, the officer's not going to know which side of the line, but if you acknowledge that there's probable cause, he doesn't need to go to the magistrate. He can just search it because it's a car. And you're telling me if it falls short, he should have, but then he's got the policy that says if the owner's not there. I mean, I take it we all can see that there was a car crash. The owner driver or renter driver was taken to the hospital. She's not there. The car's got to be towed away, and so you're into this inventory search policy, and the policy says if no probable cause, if it's short of that, that would include reasonable suspicion. You go inventory the contents of the car for the reasons that are pretty obvious. You want to know what's there so the owner will know, so you can protect yourself against claims because the towing company isn't going to want to take the risk. So you can tell me, well, there was suspicion, but I'm not sure that makes any difference because we've already established this decision tree that says if probable cause, you can search for that reason. If not probable cause, you can search under the inventory search. Even if there's suspicion, that doesn't mean there's not a legitimate reason for an inventory search. I mean, the presence of A doesn't mean B exists, so how could he not do the inventory search if the car is going to be towed away? I guess the biggest issue, Your Honor, and that directs me to the district court's holding, and Judge Windmill indicated almost exactly that. Our issue with his ruling and this line of, I guess, you know, thinking is that there is no exception now. This inventory search that Idaho State Police have put together. Well, logically, should there be? I mean, if you're going to tow a car away because the driver's been taken to the hospital and you can't leave the car there, it really doesn't surprise me that at some point you're going to need to inventory the contents. Our problem, Your Honor, was that it wasn't for the caretaking function. This was for investigative purposes to look for drugs. Okay, let's stop for a second. Certainly if the person is there, the policy says you don't inventory. So there is an exception. I mean, obviously if the person's there and it's just been a car wreck, if there's no probable cause, end of story, you call the tow company and off it goes. Now the person isn't there, as Judge Clifton was talking about. The person is not there. This somewhat hapless young officer looks around. He sees some cell phones and a police scanner. If there is a probable cause, which Judge Winch would be able to determine, and we may look at that de novo, of course, but if there's not probable cause at that point, because I know if an officer walked up to a car and had a couple of cell phones and a police scanner, you'd be in here telling us there's no probable cause, I'm sure, right? I would concede that. I would hope so. So fairness to the other client, if there were such a client, right? So now there's not probable cause, but, you know, I mean it's not everybody that has a police scanner and three cell phones. So he might have some view. But if he starts it as a legitimate inventory search, and then to me the question then is what happens if in the middle of an inventory search it, quote, changes character because of something you discover. So it seems to me that's kind of the issue you want us to look at, am I correct? Yes. I think another issue, and at least a fact that I'd point out, is that this started as a car crash investigation. The officer arrived looking at the scene to determine what happened with the wreck. And then in doing that, then he starts getting these indicators, the cell phones, how she's not cooperating, the scanner, that this rental car has been personalized, all these different things. And then things start going off in his head about there's something suspicious about what's happening. Now, this car isn't operable. There is no reason why this officer couldn't either make a phone call to a magistrate or. . . If there's probable cause, you just told me he doesn't need anything. If there's only suspicion, the phone call would be, you know, the waste of the dime, basically. Well, if there's probable cause, what are they entitled to search? Assume they're entitled to conduct an inventory search. What does that mean in terms of the facts of this case? Your Honor, if I could ask you to rephrase that real quick. I didn't quite understand your question. If there is probable cause which you say would entitle them to conduct an inventory search, what are they entitled to search? Are they entitled to search closed containers? That's the issue in this case. In an inventory search, I believe the policy is pretty open to that. I believe they probably are able to search containers. Under this policy? Yes, this policy is. . . What about Florida v. Wells? Florida v. Wells would indicate that at least containers that are closed, I believe. . . Let me refresh my memory on Florida v. Wells. This is a case of a closed container, right? This was a few duffel bags, luggage, her luggage, and that luggage was open. The red bag was open? Yes. Okay. Just one other point. Was that . . . Were the cell phones and the police scanner thrown outside the car? I believe the scanner was found outside the car. Mr. Fica can probably answer to the cell phones. I believe at least one cell phone was outside. I'm not sure, Your Honor, but I think one. . . So, in short, and I see my time is running out. . . It actually has run out. The numbers are getting bigger, but we've asked you a lot of questions. Thank you, Your Honors. I appreciate the time. I'm going to . . . And we appreciate your candor in getting the facts correct for us, so I'm going to give you a little rebuttal time. Thank you, Your Honor. You're welcome. May it please the Court. Counsel, my name is Michael Fica. I'm an assistant United States attorney in the District of Idaho. I was counsel of record at trial court in this case. Your Honors, with the Court's permission, I know we've talked about the facts, but I think this case does have some fact-specific issues. To that end, I would like to address several facts that came up in previous argument or I think are highlighted. In this case, I think it's clear from the record that Trooper Olson was, in fact, responding to a wreck at the point that he was going to that location and arrived at that location. In his mind, this was nothing but a traffic accident that he was sent to assist on. I think it's further important to note that even before Trooper Olson literally walked over and began to look around, and the record indicates that as part of his inventory, the first thing he did was survey the scene, even before that happened, Ms. Howe had been transported away from the scene in an ambulance. So there's no question that Ms. Howe was not at the scene when Trooper Olson began to look at the evidence that was strewn about. I think it's further important to note, and again, there's no question that the vehicle in this case was inoperable, but it's also important to note that Trooper Olson immediately identified the vehicle as a rental vehicle. In fact, he began by asking his dispatcher to contact the rental company because the EMPs on scene had not been able to identify Ms. Howe at that point. He'd asked that the rental company be contacted to see if they can identify who the driver was. The significance of that comes into play when we look at the inventory policy and note that even if Ms. Howe was at the scene, she wouldn't be construed the owner-operator by virtue of the fact that you did have a rental car there that belonged to another agency. So I think that's sort of an aside and not significantly relevant in this case, but I think it's worthy of note. In response to the question that the Court asked of me. What does that mean? Pardon me, Your Honor? It's worthy of note, but it's not relevant. Well, it's not. So should we just ignore it? No. I think. I'm confused about your statement. I don't think you completely ignore it. I think when you get to the meat of the facts of this case, it's not one of the core facts. But it becomes a sub-fact when you consider the necessity that Mr. Holson felt to do a good inventory. He essentially was functioning in his caretaking role with a concern not just for what would be a traditional accident. He also had to be mindful of the fact that there was another party, i.e., Enterprise Rent-A-Car, that had an interest in protection of their property at the scene. In response to the Court's questions of Mr. Vieth, I would note that the indication is clear that the multiple cell phones and the scanner that were observed by Trooper Olson had all been ejected from the car, as well the bag that the methamphetamine was found in. Trooper Olson testified, I believe, at the suppression hearing that at the point that he found the methamphetamine in the bag, he had not yet gone into the vehicle. He was simply walking around the vehicle and observing all the items that were located under the bag. So the bag was outside of the vehicle. Correct, Your Honor. And was it open? I don't believe it was open, Your Honor. I believe, and I quickly looked at the record, hoping I could find, as the Court asked, I believe my recollection of the record is that Trooper Olson did have to unzip the bag. Because he talks about on the – he talks about, he says, I think if I've unzipped the bag, although it's unclear which bag, and then he talks about opening and zipping and unzipping. But there's more than one bag because later there's bags in the trunk? That is correct, Your Honor. That is correct. And I would note, too, that as the Court, I'm sure, is aware from reviewing the record, Trooper Olson – and the district court noted this – Trooper Olson tried very hard to get his answers correct to the point that his recollection was shaky sometimes, and I think that, as the Court notes, was one of the areas where he wasn't sure whether the bag was open or not. But my recollection at discretion hearing was ultimately Trooper Olson concluded that he did have to unzip that particular bag. The one other additional fact that I would note that I think is significant to the argument is that at the point that Trooper Olson found the methamphetamine – and as you note from the record, Trooper Olson was a young trooper on the scene – he immediately contacted Trooper Winans and Trooper Barnes, who are more senior troopers, and asked them to come immediately to the scene. The record indicates that when Trooper Winans arrived at the scene – and Trooper Winans was a training officer – one of the first things that Trooper Winans told Trooper Olson was, continue with your inventory. Trooper Winans arrived at the scene to assist Trooper Olson, and at that point clearly there was a criminal investigation. But Trooper Winans stressed to Trooper Olson that nevertheless, per Idaho State Police policy, it was important that they also follow the parallel responsibility they had of continuing with the inventory. And so in that regard, I think it illustrates the fact that these officers on the scene were really trying to fulfill both of their roles. While they were trying to proceed from an investigation standpoint, they also recognized that they additionally had an inventory responsibility and were attempting to follow State Police procedure in that regard. If the bag was not open but was outside the car, does it matter that it was outside the car as opposed to inside the car? In this case, I do not believe it does, Your Honor. I would note that Judge Windmill pondered on that distinction in his ultimate decision and recognized some authority that suggests that in other jurisdictions were the procedures forbade officers from searching containers pursuant to an inventory search. If an officer in those jurisdictions had searched the container, they'd be outside of the scope of their inventory policy. Judge Windmill recognized in this case that the policy of the State Police did not make such distinction. And he pondered for a second in his decision whether or not that somehow created a problem with the policy. However, he finally noted that even in the Opperman decision, the Opperman decision dealt with the officers searching the glove compartment of the vehicle. And in that case, the policy did not specifically allow the officers to search the glove compartment. But clearly, the Supreme Court felt that it was all right that they searched the glove compartment, even though that wasn't specified. And Judge Windmill's conclusion then was it must be okay, especially given the fact that at the conclusion of the suppression hearing, Trooper Sergeant Sherman, who was Trooper Olson's supervisor at the time, took the stand and testified that he'd reviewed the facts of the case, he'd reviewed the procedures, and in his opinion, as the supervisor for these officers, these officers had followed the State Police procedure. Well, doesn't Florida v. Wales put a gloss on Opperman in the sense it says you can't leave it to the discretion of officers to decide whether to open containers or not? So that's post-Opperman, and it's a refinement. What about this case? Under the Idaho policy, that's silent on that issue so that the officers had discretion whether to open or not to open, right? And in this case, the officer exercised discretion to unzip the bag. And I understand that. I guess I would take the position, and I believe that officers took the position, that just the opposite, they did not have discretion. How can you tell? In that, well, you tell by the fact that Sergeant Zimmerman testified that this officer followed State Police procedure. And I believe, and I don't know that this was specifically addressed in questioning of Sergeant Zimmerman. I mean, it says list every item. So the question is, is that ambiguous as to whether big item or every item? I suspect the troopers would take the position, although I don't know that this is very specifically referenced in the record, that wherein it isn't delineated, they would have a responsibility to open every item. That they, in essence, don't have discretion. When they're conducting an inventory search, they have to search every item. But the way you describe it, it's the interpretation of the policy is left to the individual interpretation of the officer. In effect, they have the discretion to interpret it as to what it says about opening containers. It doesn't deal with it specifically. So that's just like saying they have discretion whether to do it or not do it. In theory, I guess that is true, although, as I mentioned, Sergeant Zimmerman testified at the discretion hearing that it's his understanding that there is conformity within the state police, that they do the searches this way every time. And the way Trooper Olson did his inventory search that day was in complete conformity with the way troopers from the state police do their searches on every occasion. So in that regard, what we do have is we do have Sergeant Zimmerman, Trooper Olson's saying to the Court, Your Honor, in this case, Trooper Olson didn't act with discretion. He followed the letter of the law as we all, as troopers, understand it to be. Your Honors, I see my time is up. I wonder if I can just make one concluding comment. Please. In conclusion, Your Honors, I'd note that to defer to the defense or to defend or to take consideration with the position the defense takes would create a logical void in this case. In essence, suspicion cannot obviate the need for the police to curtail their caretaking function. To hold Trooper Olson to this standard would have required Trooper Olson to essentially be caught in a catch-22, wherein if he was at a scene and had even some inkling of suspicion, he would have to forego his responsibilities to conduct the caretaking function of law enforcement. Trooper Olson instead followed the direction of Ockerman, which is to parallel criminal investigation while still following the literal procedures of the state police and abiding by his caretaking responsibilities. Thank you. Thank you. You have a minute for rebuttal. Thank you, Your Honor. Regarding the questions regarding, I guess, on the issue of caretaking versus evidence, on the supplemental record this Court requested that the inventory notice sheet be provided, and I was looking through that last night to see what was on that inventory sheet. Look on line two, and that inventory sheet says, and my eyes aren't the best, but it looks like notebook with people who owe. For me, in looking at what type of descriptions this officer wrote down, logic at least lends me to believe that this was no longer an inventory. This was a list of evidence. And that is our position. From the beginning, this was an investigation, and I think that is evidence of where this officer went. Thank you. Thank you, Your Honor. Thank both counsel for your argument this morning. The case of United States v. Howell is submitted. We'll next hear argument in United States v. Madsen and Nelson.
judges: McKeown, Clifton, Schwarzer